UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| | ) | |
| EIGHT PIECES OF ASSORTED JEWELRY, | ) | |
| VALUED AT $75,225; and | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF | ) | |
| $44,612 UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States Of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant eight pieces of assorted jewelry valued at $75,225 and funds in the amount of $44,612 United States Currency (the "defendant property"), alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**Nature of Action**

1. This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of the defendant eight pieces of assorted jewelry valued at $75,225 and the defendant funds in the amount of $44,612 United States currency (collectively, the "defendant property") which were seized on February 2, 2018, at 3353 N. Albany

Avenue, Chicago, Illinois. The defendant property is current in the custody of the Drug Enforcement Administration ("DEA") in Chicago, Illinois.

2. This complaint is verified by the attached affidavit of DEA Task Force Officer Chevon P. Marsh, which is fully incorporated herein.

## Jurisdiction and Venue

3. This Court has jurisdiction over an action commenced by the United States as the plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant jewelry and funds pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5. Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant jewelry and funds were found within the Northern District of Illinois.

6. The defendant jewelry and funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the properties (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were properties used and intended to be used to facilitate illegal drug trafficking, in violation of 21 U.S.C. § 841, *et seq*.

**Factual Allegations in Support of the Forfeiture of the Defendant Property[1]**

7. The Drug Enforcement Administration and IRS-Criminal Investigations are investigating a Los Angeles/Chicago-based drug trafficking organization (DTO). Based on evidence described herein, it is believed that Noah Grimes, his associate Individual A, and others illegally sell marijuana in the Chicago and Los Angeles areas and launder proceeds from those sales. For the reasons set forth herein, it is believed that the defendant funds represent proceeds from Grimes's illegal drug trafficking enterprise and the defendant jewelry was purchased with the proceeds of that enterprise.

    A.    **Seizures of Narcotics, Suspected Narcotics Proceeds, and the Defendant Property in February 2018**

8. In early 2018, agents identified 3353 N. Albany Avenue, Chicago, Illinois, as a possible residence of Noah Grimes (hereafter, the "Albany Avenue residence"). On February 1, 2018, at approximately 9:15 p.m.,[2] agents conducting surveillance at the Albany Avenue residence observed a U-Haul truck (hereafter, the "U-Haul") back into the driveway leading to the garage. Shortly thereafter, agents observed an individual who, based on his build and facial features, agents believed to be Noah Grimes, get out on the passenger's side of the U-Haul carrying a bag over

---

[1] All dates and times are approximate.

[2] At the time of this surveillance, Grimes had previously identified based on visual comparisons of known identification and law enforcement photographs, social media postings, and observations made during physical surveillance.

3

his shoulder. A male subject, later identified as Individual A,[3] got out on the driver's side. Both men then moved out of view toward the area between the garage door and the rear of the truck. Shortly thereafter, agents observed that the door of the garage and the door of the truck were both closed. Agents walked by the U-Haul and recorded its license plate number. Throughout this period no one was observed entering or leaving the residence.

9. At approximately 10:00 p.m., law enforcement agents observed Individual A place a large bag in the rear of the U-Haul and then drive away from the residence. Mobile surveillance was initiated, and at approximately 10:17 p.m., agents observed the U-Haul arrive at an apartment complex located at 367 W. Locust Street in Chicago and enter the building's garage through an overhead door immediately east of the Locust Street entrance.[4]

10. On February 2, 2018, at 12:05 a.m., agents observed Individual A[5] leave through the front of the apartment complex located 367 W. Locust Street and enter

---

[3] As explained below, Individual A was identified based on identification found on his person when he was detained by agents on February 2, 2018. According to law enforcement databases, Individual A has been arrested several times in DuPage County, Illinois for drug offenses. On October 19, 2007, Individual A was convicted of the offense of possessing 2.5 grams of cannabis and sentenced to one year supervision and a fine. On February 11, 2009, Individual A was convicted of the offense of possessing 10 to 30 grams of cannabis and sentenced to a fine and a one-year conditional discharge.

[4] Through open source databases, agents learned that Individual A was living at 367 W. Locust Street, the apartment complex where the U-Haul was parked. Agents also obtained information from U-Haul roadside assistance reflecting that an individual with the same last name as Individual A had rented a U-Haul from a facility located at 665 N. Halsted Street in Chicago on February 1, 2018, at approximately 4:00 p.m..

[5] Agents identified Individual A based on the fact that he was wearing similar clothing to and otherwise physically resembled the individual earlier observed driving the U-Haul.

an UBER vehicle waiting outside. Based on earlier surveillance of Individual A and Grimes, agents stopped the vehicle moments after it departed from 367 W. Locust Street. Individual A was asked to step out of the vehicle and was placed in handcuffs. Agents identified Individual A based on identification found on his person. Individual A declined to speak with law enforcement.

11.     Narcotics-detection canine "Harley"[6] was brought to the scene. The canine alerted positively to the presence of narcotics on two backpacks recovered from the backseat of the UBER vehicle in which Individual A was riding, on the back corner of the passenger's side of the U-Haul, and at the door of Individual A's apartment unit at 367 W. Locust Street.

12.     Based on the above, agents obtained warrants to search the U-Haul and two backpacks seized from Individual A. On February 2, 2018, at approximately 5:15 p.m., agents executed the search warrant on the U-Haul, which was parked in the garage of the apartment complex where Individual A's residence is located, and recovered a bag containing what agents later confirmed was approximately 6.15 pounds of marijuana packaged in individual plastic bags, as depicted below. The duffel bag also contained materials that, based on agents' training and experience, are commonly used to package narcotics and narcotics proceeds, including a "FoodSaver" Vacuum Sealer and plastic sheets used for vacuum-sealing.

---

[6] Harley is owned by the Village of Summit Police Department and was first certified in or about June 2017.  Harley is certified through the Illinois Law Enforcement Training and Standards Board in Springfield, Illinois.  Harley was last certified approximately in June 2017, eight months prior to the traffic stop and more recently around or about May 2018. Harley is certified in the detection of the odor of marijuana, cocaine, heroin and methamphetamine.



13. Agents also recovered from the U-Haul a two-page ledger that, based on agents' training and experience, appeared to track profits and debts incurred through the sale of units of narcotics. The ledger appeared to identify Noah Grimes, Individual A, Individual B (identified as Individual A's brother based on publicly available sources) and others in conjunction with apparent units of narcotics and narcotics proceeds.

14. Also on February 2, 2018, pursuant to the above-referenced search warrant, agents searched the backpacks recovered from the backseat of the UBER vehicle in which Individual A had been riding earlier that evening. The items recovered included: (1) a ledger that, based on agents' training and experience, appeared to track profits and debts incurred through the sale of units of narcotics, (2)

6

approximately $29,395 in bulk U.S. currency, and (3) a small quantity of Marijuana consistent with personal use. The $29,395 in U.S. currency was subsequently administratively forfeited as suspected drug proceeds.

### B. Search of Noah Grimes's residence and Seizure of the Defendant Property

15. Immediately following the above seizures, on February 2, 2018, agents obtained and executed a search warrant for the Albany Avenue residence. Upon entering the residence, at approximately 8:00 p.m., agents encountered Noah Grimes and Individual C. Both Grimes and Individual C indicated that they did not want to speak with law enforcement and invoked their right to counsel.

16. Items seized during the search of the Albany Avenue residence included five bundles of U.S. currency totaling approximately $44,612 and eight pieces of assorted jewelry with an estimated value of approximately $75,225 (the defendant property).

### C. Additional Evidence of Grimes's Drug Trafficking Activities

#### 1. Use of UPS Post Boxes in Los Angeles to Facilitate Drug Trafficking Activity in 2017

17. Additional investigation has revealed that Grimes directed other individuals to open United Parcel Service (UPS) postal boxes in the Los Angeles area to receive shipments of narcotics and narcotic proceeds, at least some of which originated in the Chicago area. For example, agents obtained documents reflecting that "Brigita Koriznaite" opened a UPS postal box in early 2017 using the address of a residence associated with located at 1600 Vine Street, Los Angeles, California (the

"Vine Street residence").[7] On March 29, 2017, agents observed Grimes enter the UPS store where Koriznaite's postal box was located and pick up four parcels addressed to "Brigita Koriznaite at 5419 Hollywood Blvd., Suite C 121, Los Angeles, CA 90027." On April 12, 2017, agents obtained a search warrant for UPS Box Suite C 121 and seized two parcels addressed to "Brigita Koriznaite." Each parcel contained four bundles of United States currency totaling approximately $20,000. The cash was in $20 denominations and was rubber-banded and vacuum-sealed inside a notebook, consistent with how drug-traffickers commonly conceal narcotics proceeds for shipment.

18.    On April 14, 2017 and April 18, 2017, agents obtained additional search warrants for two parcels sent to UPS Box Suite C 121. The first parcel contained a clear liquid that later tested positive as a controlled substance known as "liquid ecstasy" or gamma butyrolactone (GBL), and the second parcel contained $20,420 United States currency, all in $20 denominations. The cash was rubber-banded and vacuum-sealed inside a notebook, consistent with earlier shipments.

---

[7] As further described herein, agents identified 1600 Vine Street, Los Angeles, California as one of several residences used by Noah Grimes through live surveillance of Grimes and his associates, the execution of a search warrant at the Vine Street residence on February 9, 2018, packages associated with Noah Grimes that were addressed to the Vine Street residence, and the acquisition of rental documents for the unit in the name of Noah Grimes's brother, Individual E. As further explained herein, the investigation has revealed that Noah Grimes uses the identity of his brother Individual E to facilitate and conceal his drug trafficking activity by, for example, using Individual E's identity to conduct financial transactions, rent property and open postal boxes and bank accounts in his brother's name. In voluntary interviews with law enforcement interviews, Individual E, who resides in Alabama, stated that he did not authorize Noah Grimes to use his identity for these purposes and that he was not involved in Noah Grimes's drug trafficking activities.

19. Within days of the execution of the April 18, 2017 search warrant, law enforcement officers observed Grimes enter the UPS store and access Box Suite C 121, where a copy of the above search warrants had been placed. The above seized currency has not been claimed and was forfeited by the Santa Monica County Police Department.

### 2. Seizure of Marijuana and Electronic Evidence from Grimes's Los Angeles Residence in February 2018

20. On February 14, 2018, Homeland Security Investigations and DEA agents executed a State of California search warrant at the Vine Street residence. Inside the closet of the master bedroom agents located approximately 3.35 kilograms of marijuana. Individual D was present during the search and indicated that the master bedroom was used by his roommate, Noah Grimes. The master bedroom included photographs and identifying documents relating to Grimes and his romantic partner, Individual C. Individual D did not claim any of the property seized in the search.

21. During the search of the Vine Street residence, agents seized multiple electronic devices and seven cellular phones. On February 28, 2018, DEA executed federal search warrants on the electronic devices and phones seized during the search of the Vine Street residence. Data recovered from the electronic devices and phones indicated that Grimes was the owner of the devices, including photographs and text messages in which he identified himself as "Noah." Data recovered from the seized phones and devices included, among other things, photos and text exchanges that, based on agents' training and experience, pertained to the sale of narcotics and the

9

collection of narcotics proceeds, as well as apparent ledgers listing various strains and quantities of marijuana.

### D. Additional Seizures of Suspected Narcotics Proceeds from Grimes in 2014 and 2016

#### 1. DEA Seizure of $34,750 in Suspected Narcotics in October 2014

22. On October 10, 2014, the DEA Task Force at the Los Angeles International Airport (LAX) received information that Noah Grimes was on a Southwest Airlines flight to Los Angeles and believed to be traveling with a large amount of U.S. currency. Agents approached Grimes when he landed at LAX and identified themselves as law enforcement officers. When asked whether he was carrying any currency on his person, Grimes initially claimed he was carrying $23,000 in U.S. currency, then said he was carrying over $30,000, before changing his statement again and claiming he was carrying only $25,000. Grimes stated that he lived on "Vine Street"[8] in Hollywood, California, and was using the cash to purchase cars in Los Angeles to repair and resell at Autohaus, his auto body repair shop in Chicago. When asked how he had acquired the money, Grimes responded that he had earned it through his car repair business. When asked why the funds were in cash, Grimes stated that he was trying to "keep it under the table" which agents understood to be a reference to the avoidance of paying income tax. Grimes further explained that his business specialized in auto body repair and selling wheels, and

---

[8] As explained herein, 1600 Vine Street was identified as one of several residences used by Grimes to facilitate his drug trafficking activities.

10

that he kept the currency in cash because he wanted to keep the funds separate from his "legitimate" business, a debt collection company called UPG.

23. Grimes told agents that he had a bank account for his debt collection business. During the interview, Grimes used his cellular phone to access his online Bank of America account and showed agents a series financial transactions, summarized below, all of which involved amounts under the $10,000 currency transaction reporting amount for financial institutions:

- 9/19/2014 - a transaction for $7,500
- 9/5/2014 - a transaction for $9,000
- 8/19/2014 - a withdrawal for $9,200
- Deposit of $9,500 (date not indicated)
- 7/28/2014 - a withdrawal for $9,000
- 7/18/2014 - a deposit for $9,000

24. Based on Grimes's various statements about the amount of cash on his person, his explanation of the origin of these funds, his admission that he did business in cash to avoid paying taxes, and the electronic record he provided of apparently structured cash transactions, DEA seized and ultimately forfeited approximately $34,750 from Grimes as suspected narcotics proceeds.

### 2. DEA Seizure of $37,040 in Suspected Narcotics Proceeds in June 2016

25. On June 16, 2016, DEA LA IMPACT Group 15 detectives identified a parcel at a JGX FedEx facility in Los Angeles addressed to "Indivdiual E,[9] 1600 North Vine Street, Unit 1145, Los Angeles, CA, 90028," and which cost $60 to ship via "Standard Overnight" service. LA IMPACT detectives traveled to the address on the package and, finding no one home, left a business card identifying themselves as law enforcement. Two hours later, detectives received a call from a blocked cellular number from an individual identifying himself as Individual E. This individual said the parcel belonged to him and that it contained "paperwork." The individual refused consent to search the package and said he would have his attorney call the detectives. The detectives never received a call from anyone representing this individual, and obtained and executed a search warrant on the parcel on June 22, 2016. Inside the parcel was U.S. currency totaling $37,040 inside a vacuum-sealed food saver bag wrapped in a copy of "Allure" magazine. Law enforcement officers seized and forfeited the currency as suspected narcotics proceeds.

### E. Grimes's Financial Status and Use of False Identification To Conceal Drug Trafficking Activities and Illegal Income

26. According to IRS records, Grimes has never filed individual income tax returns or reported individual income to the IRS. It is believed that Grimes does not file income tax returns because any taxable income to Grimes is the result illegal drug trafficking activity. Further, evidence obtained through grand jury subpoenas,

---

[9] As explained herein, the investigation has developed evidence that Noah Grimes uses the identity of his brother, Individual, E to facilitate and conceal his drug trafficking activities.

12

physical surveillance and the execution of multiple search warrants, investigating agents have established that between July 18, 2013 and the present, Noah Grimes has leased multiple apartment units in buildings located at 1555 N. Vine Street in Los Angeles, California (the "1555 Vine Street Residence"), 1600 Vine Street in Los Angeles, California (the "1600 Vine Street Residence"), and the Cobbler Square Lofts, located at 1350 North Wells in Chicago, Illinois (the "Cobbler Square Lofts complex"). Records subpoenaed from management companies for these buildings reflect that an Illinois driver's license in the name of Grimes's brother, Individual E, was provided in support of various lease applications at these buildings. Through a visual comparison of this photocopied license and a valid Illinois ID card issued in the name of Noah Grimes, as well as physical surveillance of Noah Grimes, agents have confirmed that the individual depicted on the license submitted in support of these leases was in fact Noah Grimes, not Individual E.

27. In a voluntary interview with law enforcement, Individual E, who resides in Alabama, stated that he has never held a lease or lived at any of the above locations associated with Noah Grimes. It is believed that Grimes leased these units using his brother's identity both to conceal drug trafficking activities taking place at these addresses and to conceal and launder the proceeds of his drug trafficking activities.

28. Records subpoenaed from various financial institutions indicate that at least three bank accounts were opened in the name of Individual E between approximately May 2013 and September 2017. During this period, cash deposits

totaling $352,502 were made into these accounts. In a voluntary interview with law enforcement, Individual E denied opening these accounts and claimed to have no knowledge of their existence. According to IRS records, Individual E's reported annual income for tax years 2013 through 2017 averaged $45,481 and did not exceed $53,323. Agents believe Noah Grimes used Individual E's identity to open and use these accounts to conceal and launder proceeds of his drug trafficking activities.

## Conclusion

29. For the reasons stated herein and in the attached affidavit, the defendant eight pieces of assorted jewelry valued at $75,225 and funds in the amount of $44,612 United States Currency are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the properties: (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were properties used and intended to be used to facilitate illegal drug trafficking, in violation of 21 U.S.C. § 841, *et seq*.

WHEREFORE, the United States of America requests:

    a.    the defendant funds and defendant jewelry be proceeded against for forfeiture and condemnation;

    b.    due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

    c.    this court adjudge and decree that the defendant funds and defendant vehicle be forfeited to the United States and disposed of according to law; and

    d.    any trial be before a jury.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By: */s/ Kathryn E. Malizia*
    KATHRYN MALIZIA
    Assistant United States Attorney
    219 South Dearborn Street
    5th Floor
    Chicago, Illinois 60604
    (312) 353-5319
    Kathryn.malizia@usdoj.gov